**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

_____

|  |  |  |
|---|---|---|
| | ) | Civil File No: 09-cv-3555-MJD-JJK |
| BIRCHWOOD | ) | |
| LABORATORIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | **BIRCHWOOD LABORATORIES,** |
| | ) | **INC.'S MEMORANDUM IN** |
| v. | ) | **OPPOSITION TO DEFENDANT'S** |
| | ) | **RULE 12(b)(1) MOTION TO** |
| BATTENFELD | ) | **DISMISS** |
| TECHNOLOGIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

_____

## INTRODUCTION

Through sworn declarations filed with the United States Patent and Trademark Office (the "USPTO"), defendant Battenfeld Technologies, Inc. ("Battenfeld") accused the products of plaintiff Birchwood Laboratories, Inc. ("Birchwood") of infringing the patent in suit, U.S. Patent No. 7,631,877 (the "'877 Patent"), which was for an invention entitled "Firearms Targets and Methods for Manufacturing Firearm Targets." These declarations, coupled with the intense competition between these two parties, demonstrate that there is a case of actual controversy here. Accordingly, Battenfeld's motion to dismiss for lack of subject matter jurisdiction should be denied.

In its motion, Battenfeld disregards the significance of the "Petition to Make Special" it filed with the USPTO on April, 10, 2006. That Petition

requested that Battenfeld's patent application (the "Application") be made special under the USPTO's accelerated examination procedure, which would grant the Application accelerated review by the USPTO.  In order to obtain this accelerated review, Battenfeld had to allege "there is an infringing device actually on the market" that "unquestionably infringes" claims in the Application.[1]

As detailed below, the product referenced by Battenfeld in its declaration could only have been the Birchwood Dirty Bird® target.  Battenfeld's Application described a special type of target often described as a "reactive target."  The independent claims of the Application required that there be two different colors on the release layer of the reactive target described in the Application.  The only product "actually on the market" at the time of Battenfeld's April 10, 2006 declaration that had two different colors on the release layer of a reactive target was the Birchwood Dirty Bird® target.

Battenfeld's motion also wholly ignores (and does not attach) the November 30, 2006, declaration of named inventor, Robert J. Zara (the "Zara Declaration"), filed with the USPTO on December 11, 2006, in which Mr. Zara singles out products contained in Birchwood's 2006 catalog and "swears behind" them – *i.e.*, testifies that those products are specifically not prior art.

These filings by Battenfeld not only evidence a clear accusation of infringement by Battenfeld against Birchwood, but also show Battenfeld's focus

---

[1] Battenfeld's application file for the '877 Patent became public on March 1, 2007, per USPTO rules. (*See* Declaration of Jeremy Johnson ("Johnson Decl.") Ex. 1.) (USPTO Notice of Publication of Application, Confirmation No. 8540.)

on obtaining its patent promptly to either commence an infringement action or create a "scarecrow" to hinder Birchwood's business activity.

The impact of the accusations on Birchwood's current and future product marketing and development is significant because Birchwood and Battenfeld are the two primary competitors in the reactive target market.  Tellingly, in response to this suit, Battenfeld has not withdrawn its assertion of actual infringement, nor has it offered Birchwood a covenant not to sue.

Thus, there exists a clear case of actual controversy between the parties. Faced with the resulting "*in terrorem* choice between the incurrence of a growing liability for patent infringement and abandonment of [one of its leading products]", Birchwood is entitled under the Declaratory Judgment Act to "clear the air by suing for a judgment that would settle the conflict of interests." *See Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 735 (Fed. Cir. 1988).

Accordingly, and in light of the new, relaxed declaratory judgment jurisdiction standard established by *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007), and its progeny, Battenfeld's motion to dismiss for lack of subject matter jurisdiction must be denied.

## FACTUAL BACKGROUND

**A.   BIRCHWOOD WAS THE ONLY COMPETITOR OF BATTENFELD WITH A TWO-COLOR TARGET IN 2006.**

### 1.   Reactive Targets

This case involves a particular type of target used in firearm shooting practice known as a "reactive" or "splattering" target (the "Reactive Target"). (Declaration of Michael D. Wenner ("Wenner Decl.") ¶ 3.)[2]  Before the advent of Reactive Targets, shooters relied primarily on plain, non-reactive paper targets in their shooting practice.   (*Id.*)   Plain, non-reactive paper targets are generally comprised of a paper substrate with a shape, often in the form of circle or "bull's-eye" printed on the paper substrate.   At competitions it sanctions, the National Rifle Association has mandated the use of target designs using black ink on plain paper.   Additionally, other designs of plain, non-reactive paper targets have incorporated two or more colors on the face of the target for more than fifty years. (*Id.*)

A significant drawback of plain, non-reactive paper targets is that, even from a short distance, it is very difficult to see where the bullet or pellet has pierced the target.   (*See* Wenner Decl. ¶ 4; Ex. A.)   In order to see where the shots

---

[2] For purposes of this motion and as more fully described herein, a "Reactive Target" consists of a paper substrate which has over it a "release layer", which is in turn covered, at least in part, by a layer of ink in at least one color, that color contrasting with the color of the paper substrate.

have hit, the shooter would either have to walk to the target for a closer look, or inspect from a distance with binoculars or a scope. (Wenner Decl. ¶ 4.) Either process is time-consuming and can be disruptive to the shooter's rhythm and accuracy. (*Id.*)

Reactive Targets solve this problem by creating a mark of contrasting colors where the bullet strikes that is clearly visible to the naked eye from a distance. (*Id.* ¶ 5.) Reactive Targets are comprised of multiple layers including a release layer, typically made of clear plastic, that has a transparent layer of varnish on it, which is then topped by a layer of paint-like ink that typically covers most of the release layer. (*Id.* ) When a bullet strikes the target, the layer of paint-like ink on top of the release layer literally shatters around the bullet hole, revealing a portion of the paper substrate beneath that is substantially larger than the actual bullet hole (a "halo"). (*Id.*; Ex. B.) The halo becomes even more visible when the underlying paper substrate is of a color that sharply contrasts with the ink or paint remaining on the release layer. (*Id.*)

## 2.   The Development of the Market for Reactive Targets

Birchwood was the first entrant in the Reactive Target market to improve and commercialize the Reactive Target. (*Id.* ¶6.) From 1995 until 2003, Birchwood was the sole significant producer of Reactive Targets. (*Id.* ) During this period, Birchwood marketed its Reactive Targets under the Shoot-N-C® brand of high visibility targets. (*Id.*) In 2004, Birchwood introduced the Dirty Bird® brand target which had a paper substrate with a release layer made of a plastic-like

substance on top of the paper substrate, and a layer of ink on top of the release layer that was a different color than the substrate.  (Wenner Decl. ¶ 7.)

In its 2006 catalog, published in October 2005, Birchwood introduced another version of the "Dirty Bird®" Reactive Target that was created in response to many requests from customers since 1995 for a different colored bull's-eye. (*Id.* ¶ 8.)  This redesigned target (attached to the Wenner Decl. as Ex. C) differed from the version first introduced in the 2004 catalog in that it had a bull's-eye center section of red ink on top of its release layer, along with round sections surrounding the bull's eye formed by a black layer of ink on the release layer. (*Id.*; Ex. D at p. 16.)  (Hereinafter, this Dirty Bird® two-color target from the 2006 Birchwood catalog (shown in Exs. C & D) will be referred to as the "Birchwood Two Color Target").  Thus, there were two sections of target on the release layer of the Birchwood Two Color Target and the sections were two different colors. (*Id.*)

In 2003, Battenfeld entered the Reactive Target market under the Caldwell® Shooting Supplies brand name[3] and the Insta-View™ product trademark.  (*Id.* ¶ 9.) In addition to shooting targets, Battenfeld sells among other things, shooting rests, hearing protection, and other shooting supplies, under the Caldwell® brand name.

---

[3] In addition to Caldwell® Shooting Supplies, Battenfeld produces and sells shooting products under the following brands:  Fajen®, Inc. (gun stocks); Adams & Bennett® (replacement rifle barrels); Frankford Arsenal® (reloading tools); Miles Gilbert™ (stockmaking supplies); Past Recoil Protection®; Tipton® (gun cleaning supplies); and Wheeler® Engineering (gunsmithing supplies).  *See* http://www.battenfeldtechnologies.com/brands/.

(Wenner Decl. ¶ 9.)  In 2005 or 2006, Battenfeld introduced the Caldwell® Orange Peel™ line of targets.  (*Id.*)  The Orange Peel™ line of targets, still produced and sold by Battenfeld, has two or more colors of ink on the release layer of the target so that those colors are visible to the shooter aiming at the target.  (*Id.*)

Later, Champion® Traps and Targets ("Champion") began making its own line of Reactive Targets under the trademarks "VisiShot™" and "VisiColor™." (*Id.* ¶ 10.)  Champion's Reactive Targets have always had only one color of ink (typically black) on the outermost layer of the target (the ink layer on top of the release layer).  (*Id.*; Exs. E & F.)

## B.  BIRCHWOOD AND BATTENFELD COMPETE INTENSELY IN THE REACTIVE TARGET MARKET.

Today, Birchwood, Battenfeld, and Champion are the three makers of Reactive Targets actively selling in the marketplace.  (*Id.* ¶ 11.)  Birchwood has a majority share of the Reactive Target market.  (*Id.*)  Battenfeld also has a significant share.  (*Id.*)  Both Birchwood and Battenfeld sell several times as many Reactive Targets as Champion, which is not a major player in the Reactive Target market.  (*Id.*)

Because there are only three competitors in the Reactive Target market, the competition between them is intense.  (*Id.* ¶ 12.)  In particular, with respect to the two market leaders, Birchwood and Battenfeld, these two competitors make sales calls on almost all of the same distributors and retailers across the United States. (*Id.*)  Even in the international realm, there is direct competition between

Birchwood and Battenfeld for Reactive Target sales.  (Wenner Decl. ¶ 12.)  For example, at the recent international shooting sports trade show, known as the "IWA Show", in Nuremberg Germany, the Birchwood and Battenfeld sales booths were across from one another.  (*Id.*)

Birchwood and Battenfeld lose customers to and gain customers from one another.  (*Id.* ¶ 13.)  For example, one customer that Birchwood recently lost to Battenfeld is Bass Pro Shops, a large retailer with Reactive Target sales in excess of $100,000 per year.  (*Id.*)  Similarly, Birchwood lost its Reactive Target business at Gander Mountain, another large retailer, to Battenfeld's Caldwell® Shooting Supplies unit.  (*Id.*)  Birchwood today makes only a limited amount of Reactive Target sales to Gander Mountain.  (*Id.*)

The '877 Patent and Battenfeld's accusation of infringement hang like a cloud over Birchwood's business activities.   Specifically, Birchwood is immediately concerned with the following:

a.   Birchwood's production and sale of its market-leading products could be enjoined.

b.   Battenfeld could claim that the '877 Patent is evidence of innovation by Battenfeld in the shooting sports industry, when in fact all it did was make a minor and obvious change to the prior art.

c.   Birchwood's customers and distributors may stop buying and selling Birchwood products for fear of being drawn into a legal dispute over the '877 Patent.

d.   Because of the issuance of the patent, Birchwood is restricted in its research and development activities relating to future products.

      e.     The Reactive Targets are a significant portion of Birchwood's Sporting Goods product line, and loss of market share on Reactive Targets would severely impact Birchwood. The targets comprise about half of Birchwood's Sporting Goods catalog.

      f.     Any sales by Birchwood of its Reactive Targets could ultimately benefit its primary competitor in the form of damages if the '877 Patent is found to be valid and Birchwood is found to have infringed.

(*Id.* ¶ 15.)

## C. THE PROSECUTION HISTORY OF THE APPLICATION FOR THE '877 PATENT

On January 26, 2006, Battenfeld filed its Application with the USPTO for an invention entitled "Firearm Targets and Methods for Manufacturing Firearm Targets." (Declaration of Julia E. Markley ("Markley Decl.") (Docket No. 14) Ex. 1.) The Application contained a total of six independent claims.[4] (*Id.*) In each of the first four of its independent claims, Battenfeld claimed a firearm target that had, among other things, a release layer or similar means that had on it an ink layer having a first section of target with one color and a second section with a different color. (*Id.*) In each of its last two independent claims, Battenfeld claimed a method for manufacturing a firearm target, which stated, among other things, a method comprising a release layer or similar means having a first section

---

[4] An independent claim is a claim that does not refer back to or depend on another claim. *See* USPTO Glossary, available at http://www.uspto.gov/main/glossary/index.html#i. An infringer must infringe a patent's independent claims to be liable for patent infringement. *See Monsanto v. Syngenta Seeds, Inc.*, 503 F.3d 1352, 1359 (Fed. Cir. 2007).

of target with one color and a second section with a different color.   (*Id.*)

Accordingly, each of the six independent claims in the Application required a

target that included a release layer or similar means and an ink layer on the release

layer having at least two sections of target with the sections having different ink

colors on the release layer.  (Markley Decl. Ex. 1.)

On April 10, 2006, pursuant to 37 C.F.R. § 1.102(d), Battenfeld filed a

Petition to Make Special with the USPTO.  (*Id.* Ex. 2.)  In patent prosecution

practice, an applicant may seek to accelerate the prosecution of its application by

filing a Petition to Make Special.   One basis for seeking an accelerated

prosecution of an application is the existence of a product that is "actually on the

market" that "infringes" claims in the patent application.  The Manual of Patent

Examination Procedures ("MPEP") § 708.02 sets forth the requirements for a

petition to make special on the basis of actual infringement:

> Subject to a requirement of further showing as may be
> necessitated by the facts of a particular case, an application may
> be made special because of **actual infringement** (but not
> prospective infringement) upon payment of the fee under 37
> C.F.R. 1.17(h) and the filing of a petition accompanied by a state
> by the applicant, assignee, or an attorney/agent registered to
> practice before the Office alleging:
>
> (A)    **That there is an infringing device or product actually
> on the market or method in use**;
>
> (B)    That a rigid comparison of the alleged infringing device,
> product, or method with the claims of the application have been
> made, and that, in his or her opinion, some of the claims are
> **unquestionably infringed**; and

(C)     That he or she has made or caused to be made a careful and thorough search of the prior art or has a good knowledge of the pertinent prior art.

Applicant must provide one copy of each of the **references deemed most closely related** to the subject matter encompassed by the claims if said references are not already of record.

Models or specimens of the infringing product or that of the application should not be submitted unless requested.

MPEP § 708.02(II) (emphasis added).

As required by MPEP § 708.02(II), Battenfeld filed a declaration by its attorney, David Dutcher, in support of its Petition to Make Special (the "Dutcher Declaration").  (Johnson Decl. Ex. 2.)  In his declaration, Mr. Dutcher attested that:

I, David T. Dutcher, declare and state that:

1.     I am an attorney registered to practice before the U.S. Patent and Trademark Office and an attorney of record in the above-identified application.

2.     **There is an infringing device actually on the market and/or an infringing method in use.**

3.     I have made a rigid comparison of the **infringing device and/or method** with the claims pending in the above-identified application, and in my opinion, at least some of the claims are **unquestionably infringed.**

4.     I have a good knowledge of the pertinent prior art, and the prior art of which I am aware is listed in the Information Disclosure Statement enclosed herewith.

(*Id.*) (emphasis added.)  Along with the Petition to Make Special, Battenfeld filed the Information Disclosure Statement referenced in Paragraph 4 of the Dutcher

Declaration.  (Markley Decl. Ex. 3 (except for 2006 Birchwood Catalog.))[5]  In the Information Disclosure Statement, Battenfeld identified eight references, which according to the Dutcher Declaration, was the prior art of which Mr. Dutcher was aware when he filed the Petition to Make Special.  (*Id.*)  The following is a quotation from the April 10, 2006 Information Disclosure Statement:

| |
|---|
| Birchwood Casey 2005 Catalog, 28 pages. |
| Birchwood Casey 2006 Catalog.  The date of availability of this catalog is unknown, but it is believed to be in January 2006 or later.  Pages 5-17 [color copy attached]. |
| Birchwood Casey, 'Dirty Bird® Splattering Targets,' http://www/birchwoodcasey.com/sport/target-_index.asp?categoryID =4&subcat=22, pages 1-4, internet accessed 1/16/06. |
| Birchwood Casey, 'Shoot·N·C® Targets,' http://www.birchwoodcasey.com/sport/target_index.asp?categoryID=4&subcat=8, pages 1-8 internet accessed 1/16/06. |
| Birchwood Casey, 'Target Spots®,' http://www.birchwoodcasey.com/sport/target_index.asp?categoryID=4&subcat=12, pages 1-2 internet accessed 1/16/06. |
| Birchwood Casey, 'World of Targets®,' http://www.birchwoodcasey.com/sport/target_index.asp?categoryID=4&subcat=13, pages 1-4, internet accessed 1/16/06. |

[5] In the exhibits that Battenfeld served with this motion, Battenfeld provided to this Court photocopies of all of the other pages of the Information Disclosure Statement filed by Battenfeld with the USPTO on April 10, 2006, but did not provide this Court with the 2006 Birchwood catalog, pp. 5-17, which was the second document referenced by Mr. Dutcher in the April 10, 2006 Information Disclosure Statement.  That catalog, at page 16, contains the Birchwood Two Color Target.  The 2006 Birchwood catalog is attached to the Wenner Decl. as Ex. D.

> Champion Target, "Next Generation Paper Targets,"
> http://www.championtarget.com/products/targets/next_ge
> neration_targets.aspx, pages 1-3, internet accessed
> 1/16/06.
>
> Champion Traps & Target, 2005 Product Catalog, 11
> pages."

(Markley Decl. Ex. 10.)   On or about November 14, 2006, the USPTO granted Battenfeld's Petition to Make Special.  (*Id.* Ex. 5.)

Although the Dutcher Declaration did not expressly name the "infringing device actually on the market," that device can be none other than the Birchwood Two Color Target.  All of the independent claims in the Application required two colors on the release layer.  (*See* Markley Decl. Ex.1.) The only non-Battenfeld Reactive Target on the market in 2006 that met the Application's claims requirement of two different colored ink sections on the release layer was the Birchwood Two Color Target.  (Wenner Decl. ¶ 10.)   Thus, the "infringing device" named had to be the Birchwood Two Color Target.

This conclusion is confirmed by reading the Petition to Make Special (the "Petition") in conjunction with a subsequent filing at the USPTO by Battenfeld. On December 11, 2006, Battenfeld filed pursuant to 37 C.F.R. § 1.131, the November 30, 2006, Zara Declaration.[6]  (Johnson Decl. Ex. 3.)  The purpose of the Zara Declaration was to "swear behind" the targets in the Birchwood Casey 2006 catalog that Dutcher had identified as one of the eight references in the

---

[6] The Zara Declaration was not part of Battenfeld's filing in connection with this motion.

April 10, 2006, Information Disclosure Statement, filed in conjunction with the

Petition to Make Special.   (*See* Johnson Decl. Ex. 3.)    In patent prosecution

practice, "swearing behind" a reference means that the inventor attests that he

conceived of the invention claimed in a patent application, before the date of a

reference the applicant has filed with the USPTO.   In essence, swearing behind is

used to establish that a particular reference is not prior art against the patent

application.   Specifically, Zara declared:

> This declaration establishes invention in this country before
> January 1, 2006, and thus before the believed availability date of
> the Birchwood Casey 2006 catalog identified in the Information
> Disclosure Statement filed on April 10, 2006 in the present
> application.

(*Id.*)   Of all the documents Battenfeld submitted in support of its Petition, it chose

expressly to swear behind only the Birchwood 2006 catalog, which contains the

Birchwood Two Color Target.   No other commercially available two color

product was among the Petition references.   Thus, when Mr. Dutcher stated that

there "is an infringing device actually on the market" that "unquestionably

infringes" claims in the Application, he had to be referring to the Birchwood Two

Color Target.

## <u>ARGUMENT</u>

I.   **BATTENFELD'S MOTION TO DISMISS SHOULD BE DENIED SO THAT BIRCHWOOD CAN REMOVE THE CLOUD OVER IT AND RESOLVE THE CONTROVERSY CREATED BY BATTENFELD'S ACCUSATION OF INFRINGEMENT.**

   A.   **Following *MedImmune* And Its Progeny, the Standard to Be Met by a Declaratory Judgment Plaintiff In A Patent Case Has Been Relaxed from the Previous "Reasonable Apprehension Of Imminent Suit" Standard.**

The Declaratory Judgment Act authorizes a court to "declare the rights and other legal relations of any interested party seeking such declaration" when there is an "actual controversy." 28 U.S.C. § 2201(a).  The sole requirement for federal court jurisdiction under Article III of the U.S. Constitution and the Declaratory Judgment Act is the existence of an "actual controversy."  *Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.*, 482 F.3d 1330, 1338 (Fed. Cir. 2007) ("*Novartis*") (reversing dismissal of patent declaratory judgment action) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-41 (1937)).

The Federal Circuit formerly employed a test for determining the existence of an actual controversy which required a declaratory judgment plaintiff in a patent case to show a "reasonable apprehension of imminent suit" in order to establish standing and jurisdiction.  *See Teva Pharm. USA, Inc. v. Pfizer, Inc.*, 395 F.3d 1324, 1332 (Fed. Cir. 2005) ("*Pfizer*").  Specifically, under the old standard, the defendant's conduct must have created in the plaintiff an objectively reasonable apprehension that the defendant will initiate suit if the plaintiff continues the allegedly infringing activity, and the plaintiff must either have

15

produced the infringing device or have prepared to produce it.  *Id.* at 1332.  As stated by the Federal Circuit in *Pfizer*:  "There must be both (1) an explicit threat or other action by the patentee which creates a reasonable apprehension on the part of the declaratory judgment plaintiff that it will fact an infringement suit; and (2) present activity by the declaratory judgment plaintiff which could constitute infringement, or concrete steps taken with the intent to conduct such activity."  *Id.* (citations omitted).  However, the Federal Circuit has discarded that standard in the wake of the U.S. Supreme Court's decision in *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007).

In *MedImmune*, a case involving a patent license, the Supreme Court stated that in analyzing the "actual controversy" requirement of the Declaratory Judgment Act, "the question in each case is whether the facts alleged, ***under all the circumstances***, show that there is a substantial controversy, between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Id.* at 127 (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)) (emphasis added).  In response to *MedImmune*, the Federal Circuit has discarded the heightened "reasonable apprehension" test and adopted the "all circumstances" test.  *See Novartis*, 482 F.3d at 1337.

According to the Federal Circuit, following *MedImmune*, "the now more lenient legal standard facilitates or enhances the availability of declaratory jurisdiction in patent cases."  *Micron Technology, Inc. v. Mosaid Technologies,*

*Inc.*, 518 F.3d 897, 902 (Fed. Cir. 2008) (citing *Sony Elecs. Inc. v. Guardian Media Techs., Ltd.*, 497 F.3d 1271 (Fed. Cir. 2007) (remand of district court's dismissal of declaratory judgment action).   In *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372 (Fed. Cir. 2007) ("*SanDisk Corp.*"),  the Federal Circuit, following *MedImmune*, held that "where a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity without license, an Article III case or controversy will arise and the party need not risk a suit for infringement by engaging in the identified activity before seeking a declaration of its legal rights." *Id.* at 1381.

Judge Kyle of this Court has also recognized that "[t]he practical effect of *MedImmune* was to 'lower[] the bar for a plaintiff to bring a declaratory judgment action in a patent dispute.'" *Cimline, Inc. v. Crafco, Inc.*, No. 07-3997, 2007 U.S. Dist. LEXIS 94869, at *11 (D. Minn. Dec. 28, 2007) (J. Kyle) (denying motion to dismiss declaratory judgment action) (quoting *Frederick Goldman, Inc. v. West*, No. 06-Civ-3413, 2007 U.S. Dist. LEXIS 50259, at *3 (S.D.N.Y. July 6, 2007)). "As a result, the vast majority of courts called upon to address subject-matter jurisdiction in patent declaratory-judgment cases post-*MedImmune* have found jurisdiction to exist . . ." *Id.* (citations omitted).

**B.     This Is A Case Of Actual Controversy Between The Parties**.

Applying the post-*MedImmune* and *SanDisk Corp.* subject matter jurisdiction standard, this is a case of actual controversy. Battenfeld has asserted rights under the claims of the Application that matured into the '877 Patent based on specific ongoing and planned activity by Birchwood, namely manufacturing and selling the Birchwood Two Color Target. Birchwood maintains that the '877 Patent is invalid and not infringed. Because a substantial and immediate controversy exists, the Court should deny Battenfeld's motion to dismiss and allow Birchwood to seek a declaration that its Reactive Targets do not infringe any valid claim of the '877 Patent and/or that the '877 Patent is invalid. Further, Battenfeld should not be permitted to use its patent as a "scarecrow" to disrupt Birchwood's business. *See Novartis*, 482 F.3d at 1336, n.2 (noting that the Declaratory Judgments Act "serves the policies underlying the patent laws by enabling a test of the validity and infringement of patents that are being used as 'scarecrows.'" (quoting *Arrowhead Industrial Water Inc. v. Ecolochem*, 846 F.2d 731, 735 (Fed. Cir. 1988))).

In its public filings with the United States Patent and Trademark Office, specifically the April 10, 2006, Dutcher Declaration in support of the Petition to Make Special and the November 30, 2006, Zara Declaration, Battenfeld has undeniably asserted that it believes the Birchwood Two Color Target infringes the claims of the Application that matured into the '877 Patent. Battenfeld's express,

public charge of "actual infringement" in the Patent Office has infected the competitive environment in the market for Reactive Targets with uncertainty and insecurity.   Consistent with the purposes of the Declaratory Judgment Act, Birchwood is entitled to "clear the air by suing for a judgment that [will] settle the conflict of interests."  *Arrowhead*, 846 F.2d at 737.

Battenfeld asserts that there is no actual case in controversy because it has not communicated directly with Birchwood.  Battenfeld's argument is unavailing. Notably, a patentee's statements to the Patent Office, specifically allegations of infringement in a Petition to Make Special, have created cases of actual controversy, even under the more stringent, pre-*MedImmune* "reasonable apprehension" test.  *See Champion Int'l, Inc. v. Tech. Dev. Corp.*, No. C-2-92-0001, 1992 U.S. Dist. LEXIS 17778, at *4 (S.D. Ohio 1992) (denying patentee's motion to dismiss for lack of subject matter jurisdiction based in part on accusations in petition to make special); *The F.B. Leopold Company, Inc. v. Roberts Filter Manufacturing Company, Inc.*, No. 92-2427, U.S. Dist. LEXIS 19737, at *11-13 (W.D. Pa. August 2, 1995) (same); *U.N.X., Inc. v. Chemtron, Inc.*, No. 05-CV-0074, 1995 U.S. Dist. LEXIS 12008, at *8-10 (M.D.N.C. June 13, 1995) (denying patentee's motion to dismiss for lack of subject matter jurisdiction based on accusations of copying the invention); *Cosden Oil & Chem. Co. v. Foster Grant Co.*, 432 F. Supp. 956, 959 (D. Del. 1977) (denying patentee's motion to dismiss based on accusations appearing in affidavit filed with the USPTO).

In *Champion*, which was decided under the more stringent, pre-*MedImmune* "reasonable apprehension" test, the district court denied the patentee's motion to dismiss for lack of subject-matter jurisdiction, concluding that the patentee's conduct created a reasonable apprehension in the declaratory plaintiff that it would initiate suit if the plaintiff continued its allegedly infringing activity. 1992 U.S. Dist. LEXIS 17778, at *3. In denying the defendant's motion to dismiss, the district court pointed specifically to the fact that the defendant had filed a Petition to Make Special with the USPTO:

> Here, the record is replete with facts which, if true, clearly establish the existence of an actual controversy between the parties. **First and foremost, the Petition to Make Special** filed by Wendell Judd with the United States Patent Office states that: 'The attached Declaration recites facts and independent documentary evidence that the Applicant's invention has been and is being infringed by Champion International Corporation. . .'

*Id.* at *4 (emphasis added).

In *F.B. Leopold*, another pre-*MedImmune* case, the district court denied the patentee defendant's motion to dismiss for lack of subject-matter jurisdiction, finding that the evidence demonstrated that the declaratory plaintiff had "an objectively reasonable apprehension" that the patentee would initiate suit if the declaratory plaintiff continued to produce the allegedly infringing product. U.S. Dist. LEXIS 19737, at *11-13. In denying the defendant's motion, the district court relied specifically on the Petition to Make Special filed by the defendant in which it declared that "there is a real and immediate threat of infringement"

because the declaratory plaintiff, a competitor of the defendant, had "made substantial preparations for making the invention . . ." *Id.*

More generally, courts routinely find declaratory judgment jurisdiction based on public communications. *See, e.g., Plumtree Software, Inc. v. Datamize, LLC*, 473 F.3d 1152 (Fed. Cir. 2006) (declaratory judgment jurisdiction based on public statements in litigation involving a third party); *see also Arquest, Inc. v. Tracy*, No. 02-C-1649, 2002 U.S. Dist. LEXIS 14365, at *7 (N.D. Ill. Aug. 6, 2002) (rejecting patentee's argument that it had not directly contacted plaintiff where patentee had made public accusations of infringement).   Further, "[i]f the circumstances warrant, [declaratory judgment jurisdiction] may be found in the absence of ***any*** communication from defendant to plaintiff." *Arrowhead*, 846 F.2d at 736 (emphasis added).   Finally, even a patentee's "direct and unequivocal" statements that it has "absolutely no plan whatsoever to sue" a declaratory judgment plaintiff has been held insufficient to defeat subject matter jurisdiction in a patent declaratory judgment action.  *See SanDisk*, 480 F.3d at 1383.

Here, Battenfeld has asserted that "there is an infringing device actually on the market" that "unquestionably infringes" claims in the application.  As detailed above, the allegedly "infringing device" can be none other than the Birchwood Two Color Target.  Such an accusation alone could meet the pre-*MedImmune* heightened "reasonable apprehension" test and clearly, when considered under "all the circumstances," creates a case of actual controversy under the relaxed standard created by *MedImmune* and its progeny.   The actual controversy is readily

apparent here where the dispute is between the two companies who are the primary competitors in the Reactive Target market.  (Wenner Decl. ¶ 11-12.)

As a result of Battenfeld's declarations in the patent application leading to '877 Patent against the Birchwood Two Color Target, Birchwood is already suffering harm.   First and foremost, Birchwood has been forced to deal with choosing between abandoning the Birchwood Two Color Target or living under the cloud of Battenfeld's claims regarding the '877 patent.  (*Id*. ¶ 15.)  If the patent is found to be valid, Birchwood could be enjoined from further sale of its product.  (*Id.*) Birchwood is also concerned that Battenfeld, now that it has the patent, can go at any time to Birchwood's major customers, discuss the patent, and raise the specter with customers that they themselves are infringing the patent. (*Id.*)  At a minimum, the customers would fear they would be drawn into a dispute involving the '877 Patent.  (*Id.*)

Moreover, because of the issuance of the '877 Patent, Birchwood is restricted in its research and development activities for future products.  (*Id.*) Currently, the Reactive Targets are a large portion of Birchwood's gun-related product line and an injunction preventing their sale would have a severe negative impact on Birchwood. (*Id.*)   Birchwood is concerned that as it goes out and advertises and markets its products in the Reactive Target area, any sales that it makes would potentially ultimately benefit its chief competitor if the '877 Patent is found to be valid.  (*Id.*)

These are the very types of harm that the Declaratory Judgment Act is intended to ameliorate. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. at 775 ("The rule that a plaintiff must destroy a large building, bet the farm, or (as here) risk treble damages and the loss of 80 percent of its business before seeking a declaration of its actively contested legal rights finds no support in Article III").

## CONCLUSION

Battenfeld by its own declarations has created a controversy with Birchwood regarding Birchwood's Reactive Targets and the '877 patent. Birchwood should be permitted to remove the cloud that Battenfeld has cast over Birchwood's Reactive Targets.

Accordingly, Battenfeld's motion to dismiss should be denied.

Dated:  February 16, 2010.

**GRAY, PLANT, MOOTY,**
  **MOOTY & BENNETT, P.A.**

By    /s/ John L. Krenn     
   John L. Krenn (No. 12493X)
   Dean C. Eyler (No. 267491)
   Jeremy L. Johnson (No. 0328558)
500 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402-3796
Telephone:  (612) 632-3000
Fax:  (612) 632-4444

**ATTORNEYS FOR PLAINTIFF
BIRCHWOOD LABORATORIES,
INC.**