UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
_____

BIRCHWOOD LABORATORIES, INC.,

    Plaintiff,

v.                              **MEMORANDUM OF LAW & ORDER**
                                 Civil File No. 09-3555 (MJD/JJK)

BATTENFELD TECHNOLOGIES, INC.,

    Defendant.
_____

John L. Krenn, Dean C. Eyler and Jeremy L. Johnson, Gray Plant Mooty LLP, Counsel for Plaintiff.

Paul Robbennolt, Dorsey & Whitney LLP; and Paul T. Fortino, Scott D. Eads, and Julia E. Markley, Perkins Coie LLP, Counsel for Defendant.
_____

## I. INTRODUCTION

This matter is before the Court on Defendant's Motion to Dismiss. [Docket No. 10.] The Court heard oral argument on March 19, 2010.

## II. BACKGROUND

### A. Factual Background

Plaintiff Birchwood Laboratories, Inc. ("Birchwood") is a Minnesota

1

corporation having its principal place of business in Eden Prairie, Minnesota. It produces products for the shooting sports industry, including the Shoot•N•C® and the Dirty Bird® Reactive Targets, that contain an ink layer above the paper substrate that explodes in contrasting color around the bullet hole, making the bullet hole more visible to the naked eye.

Defendant Battenfeld Technologies, Inc. ("Battenfeld") is a Missouri corporation having its principal place of business in Columbia, Missouri. It manufactures, markets and sells products for the shooting sports industry. These products include the Insta-View™ and Orange Peel™ line of Reactive Targets. The Orange Peel line of targets have two or more colors of ink on the release layer of the target so that the location of the shot is more easily visible to the shooter.

There are only three companies that make Reactive Targets. In addition to Birchwood and Battenfeld, Champion Traps and Targets ("Champion") also makes Reactive Targets, but Champion's have only one color of ink on the release layer. Birchwood and Battenfeld are the only companies manufacturing Reactive Targets with two or more colors of ink on the release layer.

Birchwood has a majority share of the Reactive Target market, followed by

Battenfeld which has a significant share of the market. Champion is not a major player in the market. The competition between Birchwood and Battenfeld is intense, with both companies making sales calls on the same group of distributors and retailers across the United States and losing and gaining customers against one another.

On January 26, 2006, Battenfeld filed a patent application with the United States Patent and Trademark Office ("PTO") entitled "Firearm Targets and Methods for Manufacturing Firearm Targets." On April 10, 2006, it filed a "Petition to Make Special Under 37 CFR 1.102(d)," asking the PTO to expedite the processing of this patent application. Battenfeld's basis for petitioning for expedited processing of its patent application was that "[t]here is an infringing device actually on the market and/or an infringing method in use." (Dutcher Decl. ¶ 2.) Battenfeld further averred that "at least some of the claims are unquestionably infringed." (Id. ¶ 3.) Along with the Petition to Make Special, Battenfeld filed an Information Disclosure Statement identifying eight references that were potentially prior art; six of the eight references were Birchwood products.

On November 14, 2006, the PTO granted Battenfeld's Petition to Make

Special on the basis of existing infringement by the unnamed competitor. On December 15, 2009, the PTO issued United States Patent No. 7,631,877 (the " '877 Patent") to Battenfeld. All of the claims in the '877 Patent describe a Reactive Target having at least two different colors of ink.

According to Birchwood, the only non-Battenfeld Reactive Target on the market in 2006 that met the '877 Patent's requirement of two different colored ink sections was the Birchwood Dirty Bird target.

Birchwood asserts that the uncertainty caused by the issuance of the '877 patent creates a cloud over its business given Birchwood's status as the largest seller of Reactive Targets, with a product it has been manufacturing and selling for over four years and which comprises a significant portion of its catalog. Birchwood avers that it is concerned that its distributor and retail customers may opt to avoid the prospect of being drawn into a legal dispute by stopping their purchases of Birchwood's Reactive Target products; that it is restricted in its research and development for future products; and that any promotion and sales it is now making might benefit Battenfeld if, in fact, Birchwood is found to be infringing.

**B.     Procedural Background**

On December 15, 2009, the same day that the '877 Patent issued, Birchwood filed a Complaint against Battenfeld in this Court alleging Count I: Declaratory Judgment of No Infringement of the '877 Patent, Count II: Declaratory Judgment of Patent Invalidity of the '877 Patent and Count III: Declaratory Judgment of Unenforceability of the '877 Patent. In lieu of filing an answer to the Complaint, Battenfeld filed the current motion to dismiss for lack of subject matter jurisdiction.

## III. DISCUSSION

### A. Legal Standard for a Motion to Dismiss for Lack of Subject Matter Jurisdiction

Battenfeld moves for dismissal of this case under Federal Rule of Civil Procedure 12(b)(1), on the grounds that there is no actual case or controversy between the parties and therefore no subject matter jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201(a).

A court has subject matter jurisdiction under the Declaratory Judgment Act only if "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory

judgment." MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007) (footnote omitted). MedImmune's "all of the circumstances" standard reversed the Federal Circuit's prior "reasonable apprehension of suit" test. Id. at 132 n.11. The Federal Circuit now holds that, "following MedImmune, proving a reasonable apprehension of suit is one of multiple ways that a declaratory judgment plaintiff can satisfy the more general all-the-circumstances test to establish that an action presents a justiciable Article III controversy." Prasco, LLC v. Medicis Pharm. Corp., 537 F.3d 1329, 1336 (Fed. Cir. 2008) (citation omitted).

In patent cases, declaratory judgment jurisdiction exists "where a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity without license." SanDisk Corp. v. STMicroelectronics, Inc., 480 F.3d 1372, 1381 (Fed. Cir. 2007).

"The burden is on the party claiming declaratory judgment jurisdiction to establish that such jurisdiction existed at the time the claim for declaratory relief was filed and that it has continued since." Benitec Australia, Ltd. v. Nucleonics, Inc., 495 F.3d 1340, 1344 (Fed. Cir. 2007) (citations omitted).

> In order to properly dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments. In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction.

Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993) (citations omitted). "In a factual attack, the court considers matters outside the pleadings, and the non-moving party does not have the benefits of 12(b)(6) safeguards." Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (citations omitted). In this case, Defendant asserts a factual challenge.

### B. Existence of a Case or Controversy

Battenfeld argues that there is no case or controversy here, and that the mere existence of an adverse patent is insufficient to establish declaratory judgment jurisdiction. It asserts that Birchwood must show a specific, affirmative act by Battenfeld against Birchwood in order to establish the existence of a case or controversy. Battenfeld notes that it has never had any communications with Birchwood about the '877 Patent.

The Court concludes that, post-MedImmune, "[a] requirement that there be a specific, affirmative act directed towards the plaintiff to establish standing to

seek a declaratory judgment of patent invalidity would be inconsistent with the Supreme Court's mandate that the Court examine 'the facts alleged, under all the circumstances' in assessing the existence of a case or controversy." Assoc. for Molecular Pathology v. U.S. Patent & Trademark Office, 669 F. Supp. 2d 365, 388 (S.D.N.Y. 2009) (quoting MedImmune, Inc., 549 U.S. at 127). Moreover, publicly stating that the plaintiff is infringing, even when the statement is not directed at the plaintiff, can be sufficient to establish the existence of a case or controversy. See, e.g., Plumtree Software, Inc. v. Datamize, LLC, 473 F.3d 1152, 1159-60 (Fed. Cir. 2006) (finding previous "reasonable apprehension" test met when, in another lawsuit involving different parties, current defendant stated in an interrogatory response that current plaintiff was infringing and, previously, defendant had sued plaintiff regarding other similar patents); Champion Int'l, Inc. v. Tech. Dev. Corp., No. C-2-92-0001, 1992 WL 315200, at *2 (S.D. Ohio June 30, 1992) (finding subject matter jurisdiction under previous "reasonable apprehension" test when, "[f]irst and foremost," in the Petition to Make Special, the defendant named the plaintiff as infringing).

Here, although Battenfeld did not explicitly name Birchwood in its Petition to Make Special, the evidence before the Court is that, at the relevant time,

8

Birchwood was the only company, other than Battenfeld, that produced a Reactive Target having at least two different colors of ink, a characteristic described in all claims in the '877 Patent. Therefore, Birchwood was necessarily the party referred to by Battenfeld. Battenfeld provides no evidence to counter Birchwood's proof that Birchwood must be the unnamed party in the Petition to Make Special. Nor does Battenfeld assert that there is another, named or unnamed, competitor to which the Petition to Make Special refers. It follows that, in the Petition to Make Special, Battenfeld publicly averred that Birchwood was infringing its patent. Such a public accusation of infringement is sufficient to create a case or controversy. See F.B. Leopold Co., Inc. v. Roberts Filter Mfg. Co., Inc., Civil Action No. 92-2427, 1995 WL 776945, at *4 (W.D. Pa. Aug. 2, 1995) (holding case or controversy existed when patentee filed Petition to Make Special alleging existence of an already infringing product, without specifically naming the infringing product or company, and where plaintiff was able to show it was the unnamed competitor producing the allegedly infringing product ).

Finally, permitting this lawsuit to continue furthers the policy concerns raised by the Supreme Court in MedImmune:

> The rule that a plaintiff must destroy a large building, bet the farm,

9

> or (as here) risk treble damages and the loss of 80 percent of its business, before seeking a declaration of its actively contested legal rights finds no support in Article III.

549 U.S. at 134 (footnote omitted). The purpose of the Declaratory Judgment Act is to allow accused infringers to "clear the air" before substantial damages have been incurred:

> After the Act, those competitors were no longer restricted to an *in terrorem* choice between the incurrence of a growing potential liability for patent infringement and abandonment of their enterprises; they could clear the air by suing for a judgment that would settle the conflict of interests.

Hewlett-Packard v. Acceleron LLC., 587 F.3d 1358, 1362 (Fed. Cir. 2009) (citation omitted).

Here, Battenfeld publicly averred that Birchwood was currently infringing its patent. Its belief that Birchwood is infringing has been clearly announced. Birchwood does not need to continue to sell its product in fear of ever increasing potential damages until the day Battenfeld decides to enforce its patent. The most efficient choice for all involved is for this dispute to be aired and decided now.

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

Defendant's Motion to Dismiss [Docket No. 10.] is **DENIED**.

Dated: April 24, 2010                    s/ Michael J. Davis
                                         Michael J. Davis
                                         Chief Judge
                                         United States District Court